## Johnston *versus* Furnier.

1. F. died in 1807, greatly in debt, devising one-third of his land to his wife for life, the residue to his three children; the widow, who was executrix, married again; she and her husband lived on the land; he paid the debts. Afterwards, whilst the children were minors, the widow and her husband and guardian of the children, submitted to the award of three men to settle between them. They awarded part of the land to the husband and the remainder to the children, who after coming of age conveyed their part by deed reciting the award. In ejectment by one of the children against the heir of the husband: *Held*, that the deed ratified the partition under the award.

2. Family arrangements, if fair and equitable, should not be disturbed after long acquiescence, which is strong evidence of ratification by a ward of the act of his guardian.

3. A partition by an infant, although unequal, is only voidable by him when he comes of age. If he takes the whole profits after age, the partition is good for ever.

4. Ratification of a minor by acquiescence in this case.

October 24th 1871.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Westmoreland county:* No. 87, to October and November Term 1870.

This was an action of ejectment brought June 9th 1869, by Bowman Furnier against Levi Johnston, for 200 acres of land in Rostraver township, known as the "Campbell tract." David Furnier died in 1807, seised of about 420 acres of land, of which the premises in dispute are part. By his will he gave to his wife, Polly Furnier, one-third of his personal estate absolutely, and one-third of his real estate for her life. He gave to his daughters Lucinda and Matilda, and his son Bowman, all the residue of his estate, to be divided when his son should come of age. He appointed his wife and Joseph Becket executors. The widow shortly afterwards married Robert Johnston. The defendant, Levi, was the only child of the marriage. In 1822, Joseph Markle was appointed by the Orphans' Court of Westmoreland, guardian of Matilda and Bowman Furnier (the plaintiff), then about twenty years of age. Lucinda, the other daughter, was married to James Fuller. Afterwards the parties entered into an agreement contained in the following paper:—

"Whereas, David Furnier, late of Westmoreland county, died and leaving considerable property, both real and personal, which at his death appears to be considerably embarrassed in debt, and leaving and appointing in his last will and testament, his widow, Jacob Bowman and Joseph Becket, Esq., his executors, directing his said executors to pay his just debts, the said widow, before his said debts were all paid, intermarried with Robert Johnston.

19 P. F. SMITH—29

[Johnston *v.* Furnier.]

It appears that the said Robert Johnston, with his wife, one of the executors aforesaid, did proceed and pay off said debts. And the time coming that one of the heirs of the said deceased arrived at age, and the court of said county did appoint Joseph Markle the proper guardian of the other two, which were in their minority, the parties, Robert Johnston, Joseph Markle, guardian of said two children, namely, Matilda Furnier and Bowman Furnier, with James Fuller, husband of Lucinda Furnier, one other daughter of the said deceased, thinking it proper to adjust and settle all matters amicably and on the most friendly terms, did, in the month of September, eighteen hundred and twenty-two, agree and appoint James D. Cope, Esq., John Milligan, Esq., and Andrew Finley to settle and adjust all matters with respect of adjusting the accounts of said estate and divide the landed property, they agreeing to fully abide to what the said three referees do agree on, on their part each for himself. We the said referees, accordingly met on the premises on the twenty-fourth day of September of said year, and by request of the parties concerned, did adjourn on the evening of the twenty-fifth of said month to convene on said premises on the second day of October following, which we accordingly met, examining the vouchers produced with the land, will, &c., we being of the opinion that the said Robert Johnston had paid considerable amounts of said debts, for which we giving our advice and opinion, and the parties agreeing and writing to stand to the same as follows, to wit: The said Robert Johnston to have and enjoy the farm commonly called the Campbell farm, containing two hundred acres of land, with one hundred and three acres of the Beazel place, allowing the Orphans' Court of said county to order proper measures to obtain a legal title for the above described, agreeable to our opinion and the agreement of the parties, for and in consideration of moneys paid by the said Robert Johnston or advanced by him for the payment of said debts, the said Robert Johnston, with his wife, agreeing to deliver up to the said guardian and said James Fuller, full and peaceable possession of the mill and the tract, of land attached thereto, with the balance of the Beazel tract which is supposed to be about thirty-three acres, clear of all encumbrances, right of dower, or anything that may embarrass the same, with the same way of obtaining the title as above, that is as said court may order in said premises; yet it is to be remembered that the thirty-three acres to be taken off the Beazel farm for the heirs is to be on or lying most advantageous to the mill tract, so as not to take in a coal pit that the said Robert Johnston has opened. We, the parties, fully agree by the said court, in their wisdom, ordering such measures as will make said parties sufficient titles to said lands as agreed on. Witness our hands and seals the third day

[Johnston *v.* Furnier.]

of October, in the year of our Lord one thousand eight hundred and twenty-two.　Referees sign as witnesses.

| James D. Cope, | | Robert Johnston, | [seal.] |
| John Milligan, | } | Polly Johnston, | [seal.] |
| Andrew Finley. | | Joseph Markle, | [seal.] |
| | | James Fuller, | [seal.] |

On the 1st of April 1823, Robert Johnston and wife, "late Polly Furnier," by deed of that date, "in pursuance of and in order to perfect (the) award," conveyed to the children of David Furnier, "all right of dower and claim and demand whatsoever" to the mill-tract and the part of the "Beazel tract" awarded to the children by the referees, and Johnston and wife "release all claims against the heirs of said David Furnier, deceased, in pursuance of the submission and award aforesaid."

On the same day Fuller and wife and Matilda Furnier, reciting the award, &c., conveyed to Robert Johnston in fee the land assigned to him in the award.

On the 20th of April 1833, Fuller and wife, Matilda and Bowman Furnier, by deed, reciting that Johnston and wife, "in order to perfect and confirm their submission to the award of the men amicably chosen by the parties to make partition and settlement of" the Furnier estate, had conveyed and released to the children of David Furnier their interest in the land assigned by the award to the children—conveyed that land to Samuel Speers, in fee, for the consideration of $1800, "freely and clearly acquitted of all mortgages, judgments, liens and every encumbrance whatsoever, prior to the date hereof, whereby a good title to the same might hereafter become embarrassed."

On the 21st of October 1858, Levi Johnston, defendant, conveyed to Bowman Furnier, plaintiff, about five acres, part of the "Campbell tract."

Robert Johnston moved to the land in dispute shortly after the award and lived there till his death in 1838.　He erected buildings on it and otherwise improved it; his son, the defendant, has lived there since.　The plaintiff worked on the premises for Robert Johnston and the defendant, and lived on the adjoining five-acre lot sold to him in 1858; he lived in the neighborhood all his life.

The widow of Johnston, the mother of plaintiff, lived on the premises till her death.

The defendant offered in evidence the records of the Court of Common Pleas of Westmoreland county, to show that the land of David Furnier, at his death, was largely encumbered by judgments, which were paid by Robert Johnston after his marriage with the widow; also judgments against his personal representatives, which were paid by Robert Johnston.

[Johnston *v.* Furnier.]

The offer was objected to by the plaintiff, rejected by the court and a bill of exceptions sealed.

The defendant requested the court to charge the jury :—

"1. That if Bowman Furnier, the plaintiff, acquiesced in the family arrangement made by the submission and award dated 3d October 1822, for a period of over forty years after he became of age, with full knowledge of such arrangement, and permitting large and valuable improvements to be made on the land in dispute, with a full knowledge of their being made, he cannot now be permitted to disturb it, and cannot recover.

"2. That such acquiescence and ratification may be proved by his acts and declarations.

"4. That if the evidence in this case is believed by the jury, such a state of facts is made out from which the jury may infer such an acquiescence and ratification on the part of the plaintiff of the arrangement as will bar the plaintiff's recovery."

The court charged :—

"The plaintiff holds the legal title as an heir of his father. That legal title has never been transferred by the plaintiff. That entitles him to recover, unless the defendant has shown a better title.

"The defendant's claim rests upon a mere equity. Would a chancellor, under this evidence, have compelled Bowman Furnier to execute a deed to the defendant Johnston, conveying to him the legal title? Has such an equity been shown as will move the conscience of a chancellor, and take from the plaintiff the title he inherited from his father to Robert Johnston, or the present defendant? This is the question." * * *

The answers to the points were :—

"1. I do not understand the paper of the 3d October 1822, as a submission and definitive award. It is not signed by the referees, nor is there 'any submission defining the subject-matter submitted. It refers to both real and personal estate, embraces the settlement of the accounts of the decedent as the division of the interest of the real estate, and it is not stated that the parties are to be bound by it, but it is to be carried out under proper orders and decrees of the Orphans' Court. The plaintiff in this case was then a minor, and incapable of contracting, and it was done by his guardian without any authority, and without any order of court. This is not the case when one claims adversely, and enters and takes possession of another's land, and with full knowledge and acquiescence of the owner, and especially if encouraged, makes valuable improvements, and is therefore estopped. But in this case Robert Johnston and wife had a right to one-third of the land for life, and entered into possession. Their possession, and nature and extent, has reference to the nature and extent of title ; and such possession and improvements can confer no greater

[Johnston v. Furnier.]

right than the title under which they claim.   One tenant in common cannot improve another out of his right.   This point is, therefore, answered in the negative."

"2. This point is answered in the affirmative, if it depended upon parol proof, or the nature of the evidence to sustain a parol estoppel."

"4. This point under the circumstances and evidence in this case, is answered in the negative."

The verdict was for the plaintiff for one undivided third of the land.

The defendant took a writ of error, and assigned for error the rejection of his offer of evidence, the charge and the answers to the points.

*H. D. Foster* and *A. B. Marchand*, for plaintiff in error.

*E. Cowen*, for defendant in error.

The opinion of the court was delivered, January 9th 1872, by

SHARSWOOD, J.—The first error assigned is to the rejection by the court below of an offer of the defendant to prove by the records of the Court of Common Pleas of Westmoreland county, "that at the time of the death of David Furnier, his land was largely encumbered by judgments against him, which were paid by Robert Johnston, after his marriage with the widow of David Furnier; also by judgments against his personal representatives after his decease, which were paid by Robert Johnston."

Before proceeding to the consideration of this assignment, it will be proper to notice a preliminary objection which has been made to it.   It is said, that it infringes the well-settled rule of practice of this court, which requires that, whenever there is a bill of exceptions taken to the exclusion of any written evidence, a copy of the document offered must be attached to the bill, in order to enable the court to judge of its relevancy: Gratz *v.* Gratz, 4 Rawle 411; Stafford *v.* Stafford, 3 Casey 144; Aiken *v.* Stewart, 13 P. F. Smith 30.   The rule is a necessary one, and must be adhered to in all cases to which it is properly applicable.   But this is not the case when the offer is to prove the mere fact of the existence of a judgment or judgments in the same court, by the production of the original records.   The very documents offered could not be attached, and to require full copies would be a burdensome and unnecessary expense.   Nor is it within the reason of the rule, for it is not necessary that the entire record should be inspected to determine the question whether the existence of judgments was or was not relevant to the issue.

We are of the opinion that the offer thus made was relevant and ought to have been admitted.   David Furnier died in 1807,

[Johnston *v.* Furnier.]

leaving a widow and three children. By his will he devised one-third of his real estate to his widow for her life, and the residue to his children. He nominated his widow to be his executrix, and letters testamentary were accordingly issued to her. She subsequently intermarried with Robert Johnston. Many years afterwards, in 1822, a family arrangement was entered into for the settlement of his estate. To this arrangement General Joseph Markle, the guardian of Bowman Furnier, the plaintiff below, was a party. Three neighbors were appointed as referees, who reported that being of opinion that Robert Johnston had paid considerable amounts of the debts of David Furnier, they gave it as their advice and opinion that Robert Johnston should have and enjoy the farm commonly called the Campbell farm, with a part of the Beasel place, allowing the Orphans' Court of said county to order proper measures to obtain a legal title thereto, and that the mill and tract of land, with the balance of the Beasel tract, should in the same way be assured to the three children. In accordance with this award, Robert Johnston and wife, by deed, April 1st 1823, released all her estate and right in the land agreed to be assured to the children. By a deed of the same date, the children, except Bowman Furnier, conveyed their interest in the other land to Robert Johnston. Bowman Furnier seems at this time to have been of age, but did not join in the deed. The parties went into possession of their respective parts, and subsequently, by a deed, acknowledged April 20th 1833, Bowman Furnier joined his sisters and their husbands in a sale and conveyance of the part allotted to them to Solomon Speers for and in consideration of the sum of $1800. This deed recited the partition and settlement, as it is there termed, of 1822, and the release of Robert Johnston and wife in pursuance thereof. This action of ejectment against the son of Robert Johnston for the tract allotted to him, was not commenced until June 1869, nearly forty-seven years after the settlement referred to, and more than eighteen years after the death of the widow of Furnier. Such family arrangements, if fair and equitable in themselves, after so long an acquiescence, ought not to be disturbed, and such acquiescence will be strong evidence of a ratification by the ward of the act of his guardian. In Hume *v.* Hume, 3 Barr 144, where by just such a family arrangement a dispute respecting an obscure will was submitted to men, it was held that twenty-eight years' acquiescence and enjoyment of land under it, interposed a strong obstacle to any attempt to set it aside by an infant who had not avoided it when he came of age. "It could only be voidable," said Mr. Justice Sergeant, "by the infant on coming of age, and here he has acquiesced." It was very important then for the defendant below to show that this was a just and equitable settlement, and this he proposed to do by proving that Robert Johnston had paid a large amount

[Johnston v. Furnier.]

of the debts of David Furnier. In regard to these debts, which were secured by judgments in the lifetime of David Furnier, they continued to be liens on his real estate at the time of the settlement, if not then actually satisfied. The referees reported that they had examined the vouchers produced by Robert Johnstone to show the payments made by him. Under such circumstances and after so long an acquiescence, the jury would have been fully justified in finding a ratification by Bowman Furnier of the agreement entered into by his guardian.

But we think the court below ought not only to have admitted this evidence, but to have gone further, and instructed the jury that Bowman Furnier, by his deed to Solomon Speers, absolutely ratified and confirmed the partition of 1822. He conveyed the share allotted to him and his sisters clear of his mother's life-interest in one-third, she being then living, reciting her release and the award and settlement of 1822. He received his one-third of $1800, the full value of the land unencumbered by her title to one-third. A partition by an infant, even if unequal, is only voidable by him when he comes of age, and not void. If he take the whole profits of the unequal part after his full age, the partition is made good for ever: Co. Litt. 171 b. So, if he continues in possession of land received in exchange: 2 Vermont 225. "If any act of confirmation," says Chancellor Kent, "be requisite after he comes of age, to give binding force to a voidable act of his infancy, slight acts and circumstances will be a ground from which to infer the assent:" 2 Com. 237. Leases by a guardian which endure beyond the minority of the ward, are not void, but only voidable, and may be confirmed by his acceptance of rent accruing after he comes of age: Bingham on Infancy 170; Smith v. Low, 1 Atk. 489. The authorities upon this subject are fully examined by Mr. Justice Duncan, with his usual learning and ability, in Brown v. Caldwell, 10 S. & R. 114, and it was there held that if consentable lines are fairly made between adjoining tracts by the guardian of an infant, if the infant do not dissent when he comes of age, but acquiesces, he is for ever bound. See also Hill v. Roderick, 3 Penna. Law Jour. 417. Now, what can be a more unequivocal and conclusive assent and ratification by an infant after majority of a partition made by his guardian, than a sale and conveyance of the land allotted to him, clear of the encumbrance which would have otherwise attached to it, reciting the very partition as valid which he now claims to avoid?

Upon this view of the law, as applicable to the facts, it is of course unnecessary to examine the remaining assignments of error.

Judgment reversed, and *venire facias de novo* awarded.